UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | Crim. No. 18cr 10069 |
| v. | Violations: |
| | **50 U.S.C. §1705 - Conspiracy to Commit Export Violations;** |
| ANTOINE AJAKA (1), a/k/a TONY AJAKA, | **18 U.S.C. § 371 - Conspiracy to Defraud the United States;** |
| | **50 U.S.C. § 1705 – Illegal Provision of Services to Syria;** |
| ANNI BEURKLIAN (2), a/k/a ANNI AJAKA, | **18 U.S.C. § 554 – Smuggling;** |
| | **18 U.S.C. § 371 – Conspiracy to Obstruct Justice;** |
| TOP TECH US, INC., (3), and | **18 U.S.C. § 1519 – Obstruction of Justice;** |
| AMIR KATRANJI (4), a/k/a AMIR HACHEM KATRANJI, a/k/a AMIR HACHEM ALKATRANJI, a/k/a AMIR KATRA. | **18 U.S.C. § 1341 – Mail Fraud; and** |
| | **18 U.S.C. § 981 and 28 U.S.C. § 2461 – Criminal Forfeiture.** |
| Defendants. | |

INDICTMENT

The Grand Jury charges that:

INTRODUCTORY ALLEGATIONS

**A.    Defendants and Related Entities**

1.      ANTOINE AJAKA ("AJAKA") is a Lebanese national who became a lawful permanent resident ("LPR") of the United States in 2012.  At all times material to this Indictment, AJAKA and his wife, ANNI BEURKLIAN, a/k/a ANNI AJAKA ("BEURKLIAN"), also a Lebanese national, lived and worked in Waltham, Massachusetts.  BEURKLIAN became a naturalized U.S. citizen in 2010 and then petitioned for AJAKA to enter the United States as a LPR.

2.      From a date unknown but no later than 2012 and continuing to the present,

1

AJAKA owned and controlled two companies: TOP TECH US, INC. ("TOP TECH US") and Top Technologies SARL. TOP TECH US, formerly known as Right Deal Instruments and Provisions, Inc., was incorporated in the Commonwealth of Massachusetts on December 19, 2012 as a seller and distributor of U.S. origin electronic parts and components. At all times material to this Indictment, AJAKA was the President of TOP TECH US and BEURKLIAN served as its Treasurer, Secretary, and Director. They operated TOP TECH US out of their residence located in Waltham, Massachusetts until on or about January 9, 2018 when they fled the United States to avoid prosecution. Top Technologies SARL, AJAKA's other company, which is located in Lebanon, specializes in the import, export, and sale of network and electronic components.

3.      On or about December 6, 2016, AJAKA and BEURKLIAN began operating TOP TECH US under a new company name, Tech Zone. AJAKA and BEURKLIAN created this new company for the purpose of concealing their shipments overseas from the United States Government after two of TOP TECH US's international shipments had been detained and later seized by U.S. Government officials before exiting the U.S. border.

4.      AMIR KATRANJI, a/k/a AMIR HACHEM KATRANJI, a/k/a AMIR HACHEM ALKATRANJI, a/k/a AMIR KATRA ("KATRANJI") is a citizen of Syria who operates and manages EKT Electronics ("EKT"), a company headquartered in Syria with offices in Lebanon. EKT is a supplier of communication equipment, electronic components, accessories, and testing equipment. EKT was founded by KATRANJI's father, Mohammed Katranji, in 1969. KATRANJI also operates and manages EKT's subsidiaries and affiliated businesses in Syria and Lebanon, including "Polo Trading."

2

5.      On June 8, 2007 (and reaffirmed in a rule published on September 22, 2008), the

United States Government added EKT and its founder, Mohammed Katranji, to the Department

of Commerce ("DOC") Entity List because it had determined that EKT was involved in "the

acquisition or attempted acquisition of electronic components and devices capable of being used

in the construction of Improvised Explosive Devices ("IEDs").  These commodities have been

and may continue to be, employed in IEDs or other explosive devices used against Coalition

Forces in Iraq and Afghanistan."  The U.S. Government further concluded that EKT's activities

created a risk of diversion of U.S. commodities for terrorism, weapon proliferation, and activities

contrary to U.S. national security and foreign policy interest.  As a result, the United States

Government placed EKT and all of its known aliases -- Katranji Electronics, Katranji Trading,

Katranji Labs, and Electronics Systems with addresses in both Lebanon and Syria -- and

Mohammed Katranji on the Entity List.  *See* 73 Fed. Reg. 54499; 74 Fed. Reg. 54499; *see also*

15 C.F.R. § 744, Supplement No. 4 (U.S. Entity List).  Accordingly, since 2007, U.S. law

prohibited exports to EKT, its aliases, and Mohammed Katranji unless the exporter/shipper first

obtained an export license from DOC.  Further, no export licenses have been granted to export

any U.S. origin goods to EKT and Mohammed Katranji since that time.

### B.      The U.S. Sanctions Against Syria

6.      Pursuant to the International Emergency Economic Powers Act ("IEEPA"), 50

U.S.C. §§ 1701-1707, beginning in 2004, the President of the United States has issued a series of

Executive Orders prohibiting certain transactions with Syria by U.S. persons or involving U.S.

origin goods.  These sanctions were imposed as a result of Syria's sponsorship of international

terrorism, active pursuit of weapons of mass destruction and missile development, continuing

3

occupation of Lebanon, efforts to de-stabilize Iraq and undermine the reconstruction efforts of the United States and its allies, and human rights abuses.

7.     On August 17, 2011, then President Barak Obama signed Executive Order 13582, which, among other things, prohibits "the direct or indirect exportation, re-exportation, sale, or supply of any services to Syria from the United States or by a U.S. person, wherever located." To implement the restrictions on trade contained in the Executive Orders regarding Syria, including E.O. 13582, the United States Department of the Treasury, through the Office of Foreign Assets Control ("OFAC"), issued the Syrian Sanctions Regulations ("SSR") (31 C.F.R. Part 542). The SSR make clear that Executive Order 13582 prohibits any U.S. person or anyone located in the United States from providing any "services" to "a person in Syria or the Government of Syria." *See* 31 C.F.R. § 542.405(a).  OFAC has broadly defined the "services" prohibited under E.O. 13582 to include "legal, accounting, financial, brokering, freight forwarding, transportation, public relations, or other services." *See* 31 C.F.R. § 542.405(d).

8.     At no time did the defendants AJAKA, BEURKLIAN, TOP TECH US, KATRANJI, or anyone associated with Top Technologies SARL or EKT, either individually or through TOP TECH US, apply for or obtain an export license from either the Department of Commerce or the Department of Treasury, OFAC, authorizing the export of U.S. goods to EKT (including any its subsidiaries or corporate aliases) or to Syria.

C.     **Filing Requirements for Exports**

9.     The Department of Commerce requires the filing of electronic export information ("EEI"), previously Shipper's Export Declaration forms ("SEDs"), in the Automated Export System ("AES") for exports of any commodity valued over $2,500 or for which an export license

4

is required for shipment outside of the United States (with exceptions not relevant to the exports at issue in this Indictment).  The purpose of this filing requirement is to "strengthen the U.S. government's ability to prevent the export of certain items to unauthorized destinations and/or end users because AES aids in targeting, identifying, and when necessary confiscating suspicious or illegal shipments prior to exportation." 15 C.F.R. § 30.1(b).

10.     For each export transaction, pursuant to 15 C.F.R. § 30.6, the following information, among other things, is required to be filed in AES: the names and addresses of the parties to the transaction; the description, quantity, and value of the items exported; the ultimate consignee (end user); and the ultimate country of destination.  Knowingly providing false and misleading information, or causing such information to be provided, in connection with the preparation and submission of "export control documents," including EEI filings, is a violation of the Export Administration Regulations ("EAR"), 15 C.F.R. § 764.2(g)(1)(ii).  Similarly, concealing information from the Department of Commerce or the U.S. Customs Service by failing to file EEI in connection with an export also violates the EAR.  *See* 15 C.F.R. § 764.2(g)(1).

D.     <u>**The Illegal Scheme to Defraud U.S. Government and Violate Export Laws**</u>

11.     In or about 2013, AJAKA and BEURKLIAN began doing business with KATRANJI and supplying U.S. origin goods to EKT using TOP TECH US.  AJAKA and BEURKLIAN knew that KATRANJI operated a business in Syria and that they were providing brokering services to KATRANJI and his Syrian company, EKT, by buying and shipping U.S. origin goods to EKT and its customers.  EKT paid AJAKA and BEURKLIAN in excess of $200,000 through TOP TECH US's bank accounts for their services.  To conceal their illegal

activity with EKT and eliminate the EEI filing requirement, with the knowledge and agreement of KATRANJI, AJAKA and BEURKLIAN falsified shipping paperwork and undervalued goods being shipped overseas directly to, or on behalf of, EKT.

12.     On or about August 29, 2016, officers of U.S. Customs and Border Protection ("CBP") assigned to John Fitzgerald Kennedy Airport in New York detained four packages being exported from the United States by TOP TECH US.  These packages contained 1,000 electronic switches (500 Toggle Switches Model No. 8810K15 and 500 Toggle Switches Model No. 8822K20) that had a value of $13,750.  Yet TOP TECH US had told its freight forwarder that the parts were valued at less than $2,500 to avoid having to file EEI related to this export. On or about November 9, 2016, CBP's Office of Fines, Penalties, and Forfeiture sent a letter to TOP TECH US notifying it that the 1,000 switches it had attempted to export had been seized for undervaluing the items being shipped and failing to file the mandatory EEI in AES.

13.     In response to this seizure notice, on or about November 28, 2016, BEURKLIAN sent a letter to CBP in which she made numerous false statements to explain the failure of TOP TECH US to file EEI and claimed that TOP TECH US only charged their client (KATRANJI) $1,000 for the switches.  To support her claim, BEURKLIAN submitted fraudulent documents to CBP, namely, e-mails that BEURKLIAN had altered from their original form and content as well as other e-mails that she had entirely manufactured and created wholesale but had not in fact been sent or received via e-mail between BEURKLIAN and KATRANJI.  BEURKLIAN altered and falsified these records with the intent to impede, obstruct, and influence CBP's investigation of TOP TECH US's exports and EEI filing history, in violation of 18 U.S.C. § 1519.

6

**E.**   **Flight to Avoid Prosecution and False Statements**

14.    Beginning on or about January 3, 2018, AJAKA and BEURKLIAN engaged in pre-indictment plea negotiations with the Government through their counsel.  On or about January 9, 2018, AJAKA and BEURKLIAN fled the United States by driving to Canada with $28,000 in cash and numerous electronic devices (including two laptop computer wrapped in aluminum foil).  At the Canadian border, AJAKA and BEURKLIAN informed the Canadian authorities that they intended to stay in Canada for one week and then travel to Lebanon.

15.    On or about January 31, 2018, federal law enforcement agents went to the Waltham, Massachusetts residence of AJAKA and BEURKLIAN to ascertain their whereabouts.  When they rang the doorbell, BEURKLIAN, apparently using internet based security equipment, orally responded to the agents.  The agents identified themselves to BEURKLIAN, whom they had previously met, and asked her whether she and "Tony" were home.  BEURKLIAN responded that "Tony is not home" and that she "[was] at the gym."  BEURKLIAN further informed the agents that she wouldn't be home from the gym until that "evening."  When the agents inquired whether BEURKLIAN would be at the gym the entire day, BEURKLIAN stopped speaking to the agents.  These statements were designed to mislead the federal agents about the whereabouts of AJAKA and BEURKLIAN and conceal the fact that AJAKA and BEURKLIAN had fled the United States and traveled to Lebanon after learning that the Government had uncovered evidence of numerous export violations for which they faced a significant sentence of imprisonment.

**COUNT 1:**          **(50 U.S.C. § 1705 – Conspiracy to Commit Export Violations)**

The Grand Jury charges that:

16.     The allegations contained in paragraphs 1-15 are hereby re-alleged and incorporated by reference as if fully set forth herein.

17.     From a date unknown to the Grand Jury, but no later than in or about February 2013, and continuing thereafter until in or about May 2017, in the District of Massachusetts and elsewhere,

**ANTOINE AJAKA (1),**
**a/k/a TONY AJAKA,**
**ANNI BEURKLIAN (2),**
**a/k/a ANNI AJAKA,**
**TOP TECH US, INC. (3), and**
**AMIR KATRANJI (4),**
**a/k/a AMIR HACHEM KATRANJI,**
**a/k/a AMIR HACHEM ALKATRANJI,**
**a/k/a AMIR KATRA,**

defendants herein, did knowingly and willfully conspire, combine, confederate and agree with one another and with other persons known and unknown to the Grand Jury to (1) procure and export items from the United States for companies and individuals listed on the Department of Commerce's Entity List, namely EKT and associated entities; and (2) export items from the United States without filing Shipper's Export Declarations and Electronic Export Information through the Automated Export System, in violation of 50 U.S.C. §1705, Executive Order 13222, and 15 C.F.R. §§ 736.2(b)(5), 758.1, 764.2, 744.16 and Supplement No. 4 (the Entity List).

MANNER AND MEANS

The manner and means by which the conspiracy was sought to be accomplished included, among other things, the following during the dates of the alleged conspiracy:

18.     The defendants and their co-conspirators used e-mail accounts and other forms of communication to communicate with each other between the United States, Syria, and Lebanon. Several of the foreign co-conspirators used e-mail accounts that contained EKT's name in the domain name.

19.     KATRANJI caused his co-defendants AJAKA, BEURKLIAN, and TOP TECH US to purchase items from U.S. suppliers for export overseas to EKT.

20.     To obtain items and export them from the United States, defendants AJAKA, BEURKLIAN, and TOP TECH US made false statements to suppliers and shipping companies about the value, description, and ultimate end-user and country of destination for the goods being purchased and exported from the United States.  In particular, the defendants AJAKA, BEURKLIAN, and TOP TECH US provided false and misleading invoices to its shipping companies that undervalued and mislabeled the U.S. origin goods being shipped and listed false purchasers and end-users of the goods.  In addition, the true destination of some of the U.S. origin goods was concealed by transshipping the goods from the United States to the United Arab Emirates, Egypt, Hong Kong, and Lebanon.

21.     Further, it was part of the conspiracy that the defendants AJAKA, BEURKLIAN, and TOP TECH US caused shipping companies in the United States to violate the EAR by unwittingly shipping goods, valued at more than $2,500, to EKT and its subsidiaries, without filing the required EEI or obtaining the necessary export licenses.  *See* 15 C.F.R. § 758.1.

## OVERT ACTS

22.     In furtherance of the conspiracy, and to effect the objects thereof, the defendants

and their co-conspirators, committed and caused to be committed overt acts within the District of

Massachusetts and elsewhere, including, but not limited to, the following:

   a.   On or about October 2, 2013, KATRANJI created a new company -- "Polo Trading"

-- because it would make exporting items from the United States easier.

   b.   In or about February 2014, BEURKLIAN exchanged e-mails with AJAKA and

KATRANJI regarding the purchase of electronic testing equipment that TOP TECH US intended

to export overseas for KATRANJI.  BEURKLIAN informed KATRANJI and AJAKA that the

U.S. company had asked her to identify the end-user for the requested oscilloscopes.

BEURKLIAN asked KATRANJI and AJAKA via e-mail: "What should I reply to this?  If I say

no, he will ask who's the customer, just like the others did?  Any suggestions?"  In response, on

or about February 10, 2014, KATRANJI instructed BEURKLIAN: "you can reply, that you are a

trading company and have a good PR with local and international customers."

   c.   On or about February 20, 2014, BEURKLIAN purchased electronic testing

equipment ("Fluke products") from a U.S. company, which had a value of more than $8,000, for

KATRANJI.

   d.   On or about March 6, 2014, BEURKLIAN advised KATRANJI via e-mail that in

order to ship him the Fluke products using Federal Express they would have to undervalue the

goods to avoid filing any paperwork with the Government.  She wrote:

> Concerning the package, we went to Fedex to send it.  Anything $2500 & above,
> they need formalities and certificate of origin to be filled with details.  Tony
> [AJAKA] is suggesting we make the value $2480 so that we don't go through all

this procedure avoiding formality papers and time.  Can you pls reply if this is okay with you?

e.  On or about March 8, 2014, BEURKLIAN caused the Fluke products to be exported from the United States without filing any EEI associated with this shipment.  As directed by KATRANJI, the parts worth more than $8,000 were sent by BEURKLIAN via Federal Express from Massachusetts to Amirco Electronics, which is located at the same address as Al Amir Electronics, the Egyptian branch office of EKT.

f.  On May 30, 2014, KATRANJI sent an e-mail to BEURKLIAN requesting that she place an order for Alcoswitch toggle switches bearing part number MTG12 ("MTG12 Toggle Switches") for EKT.

g.  On or about June 4, 2014, BEURKLIAN ordered the MTG12 toggle switches from a U.S. company knowing they were intended for EKT Syria and sent an e-mail to KATRANJI confirming that she was able to order 124 of the MTG12 Toggle Switches.  On or about June 9, 2014, BEURKLIAN sent KATRANJI an e-mail indicating that she had shipped the MTG12 switches to him using United Parcel Service.

h.  On or about July 12, 2014, BEURKLIAN placed an order with a U.S. company for computer parts, namely 15 Rabbit Core Programmable Modules ("RCM Modules"), knowing that the purchaser of the parts was Mohammad Katranji at EKT in Syria.  Both Mohammad Katranji and EKT Syria were then listed on the Department of Commerce's Entity List.

i.  On or about July 12, 2014, KATRANJI instructed BEURKLIAN via e-mail to ship the RCM Modules and other electronic components to Dubai, United Arab Emirates, and to undervalue the parts on the shipping paperwork.

j.  On or about July 15, 2014, BEURKLIAN advised KATRANJI via e-mail that the U.S. supplier required an end-user certificate to be completed for the sale of the RCM Modules because "they need to know the end user of this product and final destination." In this e-mail, BEURKLIAN asked KATRANJI: "Should I mention Dubai?" In response, KATRANJI instructed BEURKLIAN to indicate that the parts were going to "China."

k.  On or about July 14, 2014, BEURKLIAN falsely completed the end-user certificate for the RCM Modules by indicating that the end-user was "TOP TECH US, INC." and submitted this form to the U.S. supplier to fraudulently obtain the parts ordered by EKT in Syria.

l.  On or about July 17, 2014, BEURKLIAN shipped the RCM Modules and other electronic components to Dubai via United Parcel Service as KATRANJI had instructed and caused these parts to be exported from the United States. The value of these parts was in excess of $2,500 and BEURLIAN knew they were intended for EKT in Syria yet she failed to file EEI or obtain an export license for this shipment.

m.  On or about December 10, 2014, BEURKLIAN sent an e-mail to KATRANJI advising him that she had received three items -- electronic components and testing equipment, valued at more than $2,500 -- that TOP TECH US had purchased on his behalf from US companies. In this e-mail, BEURKLIAN further asked KATRANJI, "Can you pls give me price and description for customs invoice?" In response, KATRANJI instructed BEURKLIAN to undervalue the parts by more than $2,000.

n.  On or about March 6, 2015, TOP TECH US caused EEI to be filed with the United

States Government related to an export of $11,382.70 of electronic and sound equipment that falsely identified the end-user as Top Technologies SARL in Lebanon, when in fact the end-users were KATRANJI and EKT.

o.  On or about August 8, 2015, BEURKLIAN caused 900 Toggle Switches (400 Model No. 8822K20 and 500 Model No. 8810K15) to be exported from United States to Dubai, United Arab Emirates, using the U.S. Postal Service for the benefit of KATRANJI and EKT.  In relation to this export, BEURKLIAN falsely valued the contents of the shipment at $900 when the parts were actually valued at $13,507.  BEURKLIAN also failed to file any EEI for this export with the U.S. Government.

p.  On or about November 18, 2015, BEURKLIAN sent an e-mail to KATRANJI in relation to an upcoming export of 900 Toggle Switches Model No. 8824K14 for which TOP TECH US had been charged $15,372 by a U.S. supplier.  In her e-mail, BEURKLIAN advised KATRANJI that she was going to make the value of the goods "$270" for the "customs invoice & Packing list" because that "doesn't need extra papers to be filled [sic]."

q.  On or about February 1, 2016, KATRANJI sent BEURKLIAN an e-mail entitled "New Inquiry for Switches" informing her that EKT had a "new order for switches" and requesting that she obtain quotations for three models of switches – 500 model #8822K20 switches, 500 model #8810K15 switches, and 1,950 model #8868K5 switches (collectively the "K Model Toggle Switches").  These K Model Toggle Switches each have a variety of military applications.

r.  On or about May 8, 2016, KATRANJI sent BEURKLIAN an e-mail advising her that

13

the K Model Toggle Switches "should be shipped to Hong Kong" for assembly "in China with other items."

s.   On or about May 12, 2016, TOP TECH US placed a purchase order for 2,950 Toggle Switches (Model nos. 8822K20, 8810K15, and 8868K5) for a total price of $54,896.50 with a U.S. company knowing that these switches were being purchased by EKT.

t.   On or about May 13, 2016, BEURKLIAN paid the U.S. company a deposit of approximately $41,000 in relation to the purchase order for EKT's K Model Toggle Switches.

u.   On or about June 9, 2016, BEURKLIAN caused 3D printers and computer equipment to be exported from the United States to Egypt by falsely identifying the end-user.  In relation to this export, one day earlier, on or about June 8, 2016, KATRANJI had advised BEURKLIAN via Whatsapp that they needed to change the name of the end-user on the shipping paperwork to "Amirco Electronics" because they had previously had trouble with shipping parts into Egypt. BEURKLIAN agreed to use a different name on the shipping paperwork.  Additionally, BEURKLIAN prepared false shipping paperwork undervaluing the goods being shipped, which was provided to the freight forwarder.  As a result, TOP TECH US caused the freight forwarder not to file any EEI with the U.S. Government even though the value of the goods shipped was in excess of $4,700.

v.   On or about August 6, 2016, BEURKLIAN sent KATRANJI an e-mail in relation to EKT's order of the 2,950 K Model Toggle Switches in which she asked KATRANJI for the "consignee name and address" and asked him to "tell" her if she needed "to change the description and price" on the shipment paperwork.  In response, KATRANJI instructed

BEURKLIAN to describe the parts as switches having a value of $1 each. KATRANJI also instructed BEURKLIAN to ship the parts to "Chow Sau Ha" located in Hong Kong.

w. On or about August 25, 2016, BEURKLIAN caused 1,000 of the K Model Toggle Switches (500 model no. 8810K15 switches and 500 model no. 8822K20 switches) to be shipped from the United States to Hong Kong with the intent to re-export these items to EKT. These parts, however, were detained by U.S. Customs and Border Protection at the JFK Airport in New York prior to be exported from the United States. In relation to this export, TOP TECH US had falsely identified the end-user and value of the parts to its freight forwarder. BEURKLIAN had prepared a TOP TECH US commercial invoice, which it provided to its freight forwarder, that falsely identified the value of each of the 1,000 switches as $1 for a total value of $1,000, when in fact the value of the shipment was in excess of $13,000.

x. On or about September 4, 2016, KATRANJI sent an e-mail to BEURKLIAN instructing her to change the description of the goods and not to mention the part numbers in the shipping paperwork for an export of audio frequency amplifiers, valued at approximately $8,000.

y. On or about November 30, 2016, BEURKLIAN sent a letter to CBP requesting the return of the 1000 K Model Toggle Switches, which had been detained at the JFK Airport in New York in August 2016. In this letter, BEURKLIAN made numerous false statements in an effort to conceal TOP TECH US's numerous violations of the EAR from the Government. Among other things, BEURKLIAN stated in her letter to CBP that: TOP TECH US was a new company and was not aware that the EEI reporting requirements applied to the "real value" of the parts being exported; TOP TECH US had agreed to sell the switches to its customer for only $1.00 each; and any mistake made on the shipping paperwork was unintentional.

z.   On December 5, 2016, after CBP detained a second TOP TECH US international shipment, BEURKLIAN sent an e-mail to AJAKA stating that they needed to "open a new company asap."

aa. On or about December 6, 2016, BEURKLIAN incorporated a company named "Tech Zone" for the stated purpose of "import/export sales of durable goods."  This was the same purpose for which TOP TECH US was purportedly established according to its Articles of Organization.  In addition, the business address for Tech Zone was the same as TOP TECH US - - 10 Juniper Hill Road, Waltham, Massachusetts.

bb. On or about December 9, 2016, BEURKLIAN advised KATRANJI that she was shipping items to "Top Technologies Lebanon" for him and that once the parts arrived in Lebanon, "Tony" will give them to "you."  BEURKLIAN further requested in her e-mail that KATRANJI pay AJAKA "35,154.61" for the items and indicated that "Tony [would then] transfer [the money] to me … so that I can make my payments here [that is, in Massachusetts]."

cc. On or about December 13, 2016, BEURKLIAN caused U.S. origin goods to be exported from the United States to Top Technologies SARL in Lebanon.  BEURKLIAN further caused false EEI to be filed with the Government regarding this export, which falsely identified the end-user of these goods as Top Technologies SARL in Lebanon when in fact BEURKLIAN knew the end-user for the majority of these goods was indeed KATRANJI and EKT.

dd. On or about December 14, 2016 through December 19, 2016, AJAKA confirmed with BEURKLIAN via Whatsapp that all of the items had been received in Lebanon for "Amir" or words to that effect.

ee. On or about February 18, 2017, BEURKLIAN told KATRANJI that a lawyer told

16

AJAKA and BEURKLIAN that they needed to "go easy on export[ing] until the problem" was resolved but BEURKLIAN told KATRANJI that they (AJAKA and BEURKLIAN) could still ship computers and electronics to their company in Lebanon, Top Technologies SARL, for him.

All in violation of 50 U.S.C. § 1705 and 18 U.S.C. § 2.

**COUNT 2:**          **(18 U.S.C. § 371 – Conspiracy to Defraud the United States)**

The Grand Jury charges that:

23.     The allegations contained in paragraphs 1-15 and 18-22 are hereby re-alleged and incorporated by reference as if fully set forth herein.

24.     From a date unknown to the Grand Jury, but no later than in or about February 2013, and continuing thereafter until in or about May 2017, in the District of Massachusetts and elsewhere,

**ANTOINE AJAKA (1),**
**a/k/a TONY AJAKA,**
**ANNI BEURKLIAN (2),**
**a/k/a ANNI AJAKA,**
**TOP TECH US, INC. (3), and**
**AMIR KATRANJI (4),**
**a/k/a AMIR HACHEM KATRANJI,**
**a/k/a AMIR HACHEM ALKATRANJI,**
**a/k/a AMIR KATRA,**

defendants herein, did knowingly and willfully conspire, combine, confederate and agree with one another and with other persons known and unknown to the Grand Jury to defraud the United States by impeding, obstructing, and interfering with the lawful government functions of various federal agencies, including the Department of Commerce and the Department of Homeland Security, in the ascertainment and collection of customs and export information and the exercise of authority to inspect and examine cargo crossing the United States border, through deceitful, improper, unlawful, and dishonest means, to wit: knowingly failing to file export information in the form of SEDs and EEI, and knowingly filing and causing the filing of false and misleading EEI with the U.S. Government, and one or more co-conspirators did one or more acts to effect

the object of the conspiracy as described in paragraphs 22 (a-cc).

All in violation of 18 U.S.C. § 371.

**COUNT 3:**        **(50 U.S.C. §1705 – Illegal Provision of Services to Syria)**

The Grand Jury charges that:

25.     The allegations contained in paragraphs 1-15 are hereby re-alleged and incorporated by reference as if fully set forth herein.

26.     From a date unknown to the Grand Jury, but no later than in or about February 2013, and continuing thereafter until in or about May 2017, in the District of Massachusetts and elsewhere,

**ANTOINE AJAKA,**
**a/k/a TONY AJAKA;**
**ANNI BEURKLIAN,**
**a/k/a ANNIE AJAKA; and**
**TOP TECH US, INC.;**

defendants herein, did knowingly and willfully provide services to a person located in Syria, to wit: brokering, purchasing, and supplying U.S. origin goods to AMIR KATRANJI, a/k/a AMIR HACHEM KATRANJI, a/k/a AMIR HACHEM ALKATRANJI, a/k/a AMIR KATRA and EKT, a company headquartered in Syria, in violation of Executive Order 13582 and 31 C.F.R. § 542.405.

All in violation of 50 U.S.C. § 1705.

**COUNTS 4-11:**          **(18 U.S.C. § 554 – Smuggling)**

The Grand Jury charges that:

27.     The allegations contained in paragraphs 1-15 are hereby re-alleged and

incorporated by reference as if fully set forth herein.

28.     On or about the dates listed as to each count, in the District of Massachusetts and

elsewhere,

**ANTOINE AJAKA (1),**
**a/k/a TONY AJAKA,**
**ANNI BEURKLIAN (2),**
**a/k/a ANNI AJAKA,**
**TOP TECH US, INC. (3), and**
**AMIR KATRANJI (4),**
**a/k/a AMIR HACHEM KATRANJI,**
**a/k/a AMIR HACHEM ALKATRANJI,**
**a/k/a AMIR KATRA,**

defendants herein, did fraudulently and knowingly buy, sell, receive, and facilitate the

transportation, concealment, and sale of merchandise, articles, and objects described more fully

below, contrary to the laws and regulations of the United States; and did fraudulently and

knowingly export and send and cause to be exported and sent from the United States

merchandise, articles, and objects contrary to the laws and regulations of the United States, that

is, 50 U.S.C. § 1705, 15 C.F.R. §§ 736.2(b)(5), 758.1, 764.2, 744.16 & Supplement No. 4 (the

DOC Entity List), and Executive Orders 13222 and 13582:

| Count | Approximate Date of Purchase and Export | Item Description |
|---|---|---|
| 4 | February - March 2014 | Electronic testing equipment (Fluke Products) |
| 5 | May-June 2014 | 62 MTG12 Toggle Switches |
| 6 | May-July 2014 | 15 RCM4300 Core Programmable Modules |
| 7 | February-March 2015 | Electronic components and sound equipment |
| 8 | November 2015 | 900 Toggle Switches Model No. 8824K14 |
| 9 | June 2016 | 3D Printers and electronic components |
| 10 | August 2016 | 1,000 Toggle Switches (500 Model No. 8810K15 and 500 Model No. 8822K20) |
| 11 | November -December 2016 | Computers, computer equipment, and electronic components |

All in violation of 18 U.S.C. §§ 554 and 2.

**COUNT 12:**          **(18 U.S.C. § 371 – Conspiracy to Obstruct Justice)**

The Grand Jury charges that:

29.     The allegations contained in paragraphs 1-15 are hereby re-alleged and incorporated by reference as if fully set forth herein.

30.     From a date unknown to the Grand Jury, but no later than in or about September 2016, and continuing thereafter until in or about May 2017, in the District of Massachusetts and elsewhere,

**ANTOINE AJAKA (1),**
**a/k/a TONY AJAKA,**
**ANNI BEURKLIAN (2),**
**a/k/a ANNI AJAKA,**
**TOP TECH US, INC. (3), and**
**AMIR KATRANJI (4),**
**a/k/a AMIR HACHEM KATRANJI,**
**a/k/a AMIR HACHEM ALKATRANJI,**
**a/k/a AMIR KATRA,**

defendants herein, did knowingly conspire, combine, confederate and agree with one another, and with others known and unknown to the grand jury, to commit an offense against the United States, to wit, Obstruction of Justice, in violation of 18 U.S.C. § 1519, by agreeing to knowingly alter, destroy, mutilate, conceal, cover up, falsify, and make a false entry in, a record and document, with the intent to impede, obstruct, and influence an investigation and proper administration of a matter within the jurisdiction of an agency of the United States Government, and in relation to and contemplation of such investigation and matter.

OVERT ACTS

31.     In furtherance of the conspiracy, and to effect its objects, the defendants committed overt acts, including, but not limited to, the following:

23

(a)  After receiving a letter from CBP notifying TOP TECH US that 1,000 electronic switches it had attempted to ship to Hong Kong in September 2016 had been seized for undervaluing their value and failure to file the mandatory Electronic Export Information (EEI), BEURKLIAN and AJAKA discussed how to conceal their illegal activity.

(b)  On or about November 15, 2016, BEURKLIAN sent an e-mail to KATRANJI attaching a falsified invoice purporting to show that TOP TECH US had charged one of KATRANJI'S front companies, Smart Logistic in Lebanon, $16,359.17 on November 12, 2015 for 900 electronic switches.  BEURKLIAN told KATRANJI in her e-mail, "Tony will explain to you about his old invoice."

(c)  On or about November 17, 2016, BEURKLIAN created documents using Microsoft Word that purported to be a series of e-mails that had been exchanged between TOP TECH US and KATRANJI, which falsely claimed that the 1,000 electronic switches CBP had detained were exported to KATRANJI for $1,000, more than $12,000 less than their actual value.

(d)  On or about November 28, 2016, BEURKLIAN mailed a letter to U.S. Customs and Border Protection, which contained a false record of TOP TECH US's business transactions with KATRANJI.  In her letter to CBP, BEURKLIAN contended that EEI related to the export of the electronic switches was not filed as a result of a "mistake" and that TOP TECH US was only paid $1,000 for these switches even though they were worth $13,910.40.  BEURKLIAN also submitted falsified e-mail correspondence with her letter to CBP that she had created to support her claim that TOP TECH US's failure to submit EEI was an unintentional mistake.

(e)  On or about November 29, 2016, BEURKLIAN sent KATRANJI an e-mail

24

containing the invoices and e-mail correspondence that she had submitted to CBP.

BEURKLIAN further instructed KATRANJI: "pls call me on what's app when you receive this email."

(f)  On or about December 1, 2016, BEURKLIAN advised KATRANJI via Whatsapp that she sent the paperwork to the Government regarding the switches "to justify the situation as you know, like we agreed upon."  BEURKLIAN further requested KATRANJI "to say the same thing" if "someone calls you … so we don't find ourselves in trouble."

All in violation of 18 U.S.C. § 371.

**COUNT 13:**          **(18 U.S.C. § 1519 – Obstruction of Justice)**

The Grand Jury charges that:

32.     The allegations contained in paragraphs 1-15 are hereby re-alleged and incorporated by reference as if fully set forth herein.

33.     From a date unknown to the Grand Jury, but no later than in or about September 2016, and continuing thereafter until in or about May 2017, in the District of Massachusetts and elsewhere,

**ANTOINE AJAKA (1),**
**a/k/a TONY AJAKA,**
**ANNI BEURKLIAN (2),**
**a/k/a ANNI AJAKA,**
**TOP TECH US, INC. (3), and**
**AMIR KATRANJI (4),**
**a/k/a AMIR HACHEM KATRANJI,**
**a/k/a AMIR HACHEM ALKATRANJI,**
**a/k/a AMIR KATRA,**

defendants herein, did alter, destroy, mutilate, conceal, cover up, falsify, and make a false entry in, a record and document, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of an agency of the United States Government, and in relation to and contemplation of such investigation and matter.

All in violation of 18 U.S.C. §§ 1519 and 2.

**COUNT 14:**          **(18 U.S.C. § 1341 – Mail Fraud)**

The Grand Jury charges that:

34.     The allegations contained in paragraphs 1-15 are hereby re-alleged and incorporated by reference as if fully set forth herein.

35.     From a date unknown to the Grand Jury, but no later than in or about November 2016, in the District of Massachusetts and elsewhere,

**ANTOINE AJAKA,**
**a/k/a TONY AJAKA; and**
**ANNI BEURKLIAN,**
**a/k/a ANNIE AJAKA;**

defendants herein, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representation, and promises, for the purpose of executing such scheme and artifice and attempting to do so, placed and caused to be placed in a post office and authorized depository for mail matter, a matter and thing to be sent and delivered by the Postal Service, and knowingly caused a thing to be delivered by U.S. mail, to wit, a package addressed to U.S. Customs & Border Protection, JFK Airport, Building #77, Jamaica, NY 11430.

All in violation of 18 U.S.C. §§ 1341 and 2.

## FORFEITURE ALLEGATION
### (18 .S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

36.    Upon conviction of Conspiracy, in violation of 50 U.S.C. § 1705, set forth in Count 1 of this Indictment, Illegal Provision of Services to Syria, in violation of 50 U.S.C. § 1705, set forth in Count 3 of this Indictment, Smuggling, in violation of 18 U.S.C. § 554, as set forth in Counts 4-11 of this Indictment, and Mail Fraud, in violation of 18 U.S.C. § 1341, set forth in Count 14 of this Indictment,

**ANTOINE AJAKA (1),**
**a/k/a TONY AJAKA,**
**ANNI BEURKLIAN (2),**
**a/k/a ANNI AJAKA,**
**TOP TECH US, INC. (3), and**
**AMIR KATRANJI (4),**
**a/k/a AMIR HACHEM KATRANJI,**
**a/k/a AMIR HACHEM ALKATRANJI,**
**a/k/a AMIR KATRA,**

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

37.    If any of the property described in Paragraph 36, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendants --

        (a)    cannot be located upon the exercise of due diligence;

        (b)    has been transferred or sold to, or deposited with, a third party;

        (c)    has been placed beyond the jurisdiction of the Court;

        (d)    has been substantially diminished in value; or

      (e)     has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property described in Paragraph 34 above.

      All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

A TRUE BILL

*Richard Healy*

FOREPERSON OF THE GRAND JURY

B. STEPHANIE SIEGMANN
Assistant United States Attorney

DISTRICT OF MASSACHUSETTS, Boston, MA          March 21, 2018

Returned into the District Court by the Grand Jurors and filed.

Deputy Clerk *Putnam*
HAROLD PUTNAM
3/21/18 @ 12:06 pm